Opinion issued December 15, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-01002-CV

———————————

Mike Boulanger, Trustee, On behalf of Westlum Trust, Appellant

V.

Waste
Management of Texas, Inc., Waste Management, Inc., and USA Waste Landfill
Operations and Transfer, Inc., Appellees



 



 

On Appeal from the 334th District Court

Harris County, Texas



Trial Court Case No. 2010-28400

 



 

MEMORANDUM OPINION

          Appellant, Mike Boulanger, as Trustee
on behalf of the Westlum Trust, and appellees, Waste
Management of Texas, Inc., Waste Management, Inc., and USA Waste Landfill
Operations and Transfer, Inc. (collectively, Waste Management), each claim fee title
to an abandoned railroad right-of-way through separate deeds.  The trial court granted summary judgment in
favor of Waste Management and against Boulanger.  In five issues on appeal, Boulanger contends
the summary judgment should be reversed because the trial court looked beyond
the four corners of the deed to ascertain the parties’ intent, considered the
rules for deed construction and extrinsic evidence in the absence of any
pleading or finding of ambiguity, and failed to recognize the existence of a
fact issue as to the ownership of the right-of-way.  

          We affirm the trial court’s summary
judgment.

Background

          The Sam Houston Recycling
Center sits at the southwest corner of Westview Drive and Lumpkin Road in
Houston, Texas.  The property consists of
two tracts of land:  (1) the “Main Tract”
of approximately 3.6406 acres and (2) the “Panhandle Tract” of approximately
2.117 acres.  Running in a north-south
direction between the Main Tract and the Panhandle Tract is the forty-foot-wide
railroad right-of-way that is the subject of this appeal.  

          The
Main Tract and the Panhandle Tract originally were part of a larger, 142 acre tract
of land owned by C.P. Lumpkin.  Lumpkin
split the 142 acres into various parcels. 
The Main Tract and the Panhandle Tract were included in one parcel,
which consisted of 14.177 acres.  In
1955, Lumpkin conveyed 13.697 acres of the parcel, including the Main and
Panhandle Tracts, by deed to Cramerus Realty Company (the
Cramerus Deed). 
The Cramerus Deed identified the property
conveyed by metes and bounds description and stated that it was “LESS the
following tract of land reserved for railroad right-of-way:”  

BEGINNING
at a point in the North line of Tract “F” above from which the Northwest corner
of tract “F” bears N. 88 deg. 38’ 23” W. 681.93 feet; 

THENCE
S. 88 deg. 38’ 23” E., along the North line of Tract “F”, 40.01 feet to a
point;

THENCE
S. 88 deg. 38’ 33: W. along the South line of Tract “F” 40.01 ft. to a point; 

THENCE North 522.70 feet to the place of beginning, and containing 0.480
acres of land.

 

          The
parties dispute whether this language conveyed fee title to the right-of-way
along with the Main and Panhandle Tracts. 
Waste Management alleges that it did and that, through a series of
subsequent conveyances, Waste Management acquired the right-of-way. Specifically,
in 1991, separate grantors conveyed both the Main and Panhandle Tracts by deed
to Waste Management’s corporate predecessor (the Waste Management Deeds), who then
established the recycling center.  According
to Waste Management’s regional Director of Planning and Project Development,
Charles Rivette, Waste Management has used the right-of-way
to operate the recycling center and to cross back and forth between the Main
and Panhandle Tracts for more than fifteen years.  There is no alternate route between the Main
and Panhandle Tracts.  Because the right-of-way
was abandoned by the railroad in 1999, Waste Management contends that, “if [the
right of way is not] utilized as part of the Sam Houston Recycling Center, [it]
would be a useless, land-locked piece of real estate.”  In contrast, Boulanger denies that Lumpkin
conveyed fee title to the right-of-way in the Cramerus
Deed; instead, Boulanger alleges that Lumpkin retained the right-of-way in the Cramerus Deed and that Boulanger later purchased the right-of-way
as part of the 0.7175 acres he acquired from Lumpkin’s heirs in 2005.  

Boulanger filed suit against Waste
Management for trespass and unjust enrichment. 
Waste Management filed counterclaims for trespass to try title and suit
to quiet title.  Waste Management also filed
a combined no-evidence and traditional motion for partial summary judgment, asserting
that Boulanger had no evidence of the ownership element of his trespass claim
or, alternatively, that Waste Management had conclusively negated that element.[1]  Without stating its reasons, the trial court
granted Waste Management’s motion. 
Thereafter, the parties dismissed the remainder of their claims, rendering
the trial court’s partial summary judgment order a final and appealable judgment.  This appeal followed.      

Summary Judgment Standard of Review

          We review a
summary judgment de novo.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); City of Galveston v. Tex. Gen. Land Office, 196 S.W.3d 218, 221
(Tex. App.—Houston [1st Dist.] 2006, pet. denied).    A defendant
is entitled to a no-evidence summary judgment if, after adequate time for
discovery, there is no evidence of one or more essential elements of the plaintiff’s
claim.  Tex.
R. Civ. P. 166a(i); LMB, Ltd. v. Moreno, 201 S.W.3d 686, 688
(Tex. 2006).  A defendant moving for a
traditional summary judgment, however, must conclusively negate at least one
essential element of the plaintiff’s claim or conclusively establish each
element of an affirmative defense.  Tex. R. Civ. P. 166a(c); Frost Nat’l Bank v. Fernandez, 315
S.W.3d 494, 508-509 (Tex. 2010); City
of Galveston, 196 S.W.3d at 221.  Under
both standards, we view all evidence in a light favorable to the non-movant and
indulge every reasonable inference in the non-movant’s favor.  Dorsett,
164 S.W.3d at 661; City
of Galveston, 196 S.W.3d at 221. 

Deed Construction

          The parties’ disagreement is not
limited to their difference of opinion on the legal effect of Lumpkin’s
conveyance; they also dispute the proper role of construction aids and
extrinsic evidence in construing the Cramerus
Deed.  Boulanger argues in his second and
fourth issues that neither the trial court nor this Court may apply the rules
of construction or consider extrinsic evidence in the absence of a pleading or
finding that the Cramerus Deed is ambiguous.  Because there was no pleading or finding of
ambiguity, Boulanger contends we are bound by the language used in the “four
corners” of the Cramerus Deed in determining whether Lumpkin
conveyed fee title to the right-of-way.  Waste
Management, however, argues that when the construction of a deed is at issue,
the courts must consult the rules of construction to give legal effect to the language
used in the conveyance.  According to
Waste Management, the existence of an ambiguity is a prerequisite only to the
admission of extrinsic evidence.  Waste
Management states the correct rule.  

The construction of a deed is ordinarily a question of law.  See
Terrill v. Tuckness, 985 S.W.2d
97, 101 (Tex. App.—San Antonio 1998, no pet.) (noting
that rules of contract construction ordinarily apply to construction of
deeds).  Our primary concern in
construing a deed is to ascertain the parties’ true intent as expressed in the
instrument.  Luckel v. White, 819 S.W.2d
459, 461 (Tex. 1991); CenterPoint
Energy Houston Elec., L.L.P. v. Old TJC Co., 177 S.W.3d 425, 430 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied).  “Because ‘once a dispute arises over meaning,
it can hardly be expected that the parties will agree on what meaning was
intended,’ courts use canons of construction to help ascertain the parties’
intent.”  French v. Chevron U.S.A., Inc., 896 S.W.2d 795, 797 (Tex. 1995)
(quoting Southland Royalty Co. v. Pan Am.
Petroleum Corp., 378 S.W.2d 50, 59 (Tex. 1964) (Calvert, C.J.,
concurring)).  The “four corners” rule requires
us to ascertain intent from the entire instrument.  See
French, 896 S.W.2d at 797.  We must strive to harmonize all of the deed’s
parts, construing the deed to give effect to all of its provisions.  Luckel, 819 S.W.2d at 462; CenterPoint Energy, 177 S.W.3d at 430.  Extrinsic evidence of intent is admissible
only if the deed is ambiguous on its face. 
See Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280, 283 (Tex. 1996); CenterPoint Energy, 177 S.W.3d at 431 (“A court may
consider the parties’ interpretations of the contract through extrinsic or parol evidence only after a contract is first determined to
be ambiguous.”).  

The decision whether the deed is
ambiguous is also a question of law.  See J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003); see also CenterPoint Energy,
177 S.W.3d at 430.  To make this
determination, we look at the deed as a whole in light of the circumstances existing
when the parties entered into their agreement. 
See CenterPoint
Energy, 177 S.W.3d at 430.  If the deed is worded in such a way that it
can be given a definite or certain legal meaning, then it is not ambiguous and
the court will be confined to the writing. 
See id. at
30-31.  A mere disagreement about the proper interpretation
of a deed, however, does not make the deed ambiguous; the instrument is
ambiguous only if, after application of the rules of construction, the deed is
reasonably susceptible to more than one meaning.  Brown v. Havard, 593 S.W.2d 939, 942
(Tex. 1980); Universal C.I.T. Credit
Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951). 

Thus, in summary, a court may (1)
hear and consider evidence of the circumstances surrounding the execution of
the Cramerus Deed and (2) apply the rules of
construction to resolve the parties’ disagreement as to the proper construction
of the deed.  Contrary to Boulanger’s
assertion, neither a pleading nor a finding of ambiguity is required.  The absence of an ambiguity on the face of
the deed only precludes the admission and consideration of extrinsic evidence
of the parties’ subjective intent.  See CenterPoint Energy,
177 S.W.3d at 430. 


We overrule Boulanger’s second and
fourth issues.

The Cramerus
Deed

The remainder of Boulanger’s issues address the merits of the
trial court’s summary judgment. 
Boulanger contends that summary judgment was improper because of ambiguity
in the Cramerus Deed and the existence of fact issues
as to the ownership of the railroad right-of-way.  Because ownership is the dispositive issue in
this case, we must determine whether Lumpkin granted Cramerus
fee title to the right of way.  

A single
word gives rise to the parties’ differing opinion as to the legal effect of
Lumpkin’s conveyance: “LESS.”  The Cramerus Deed conveys certain property “LESS the
[described] tract of land reserved for railroad right-of-way.”  Using dictionaries to define “less” as
commonly meaning “devoid of,” Boulanger contends the Cramerus
Deed excluded the right of way from the conveyance of the Main and Panhandle Tracts.  Waste Management disagrees that “LESS” excludes
the right-of-way and suggests a different construction of the term—namely, one having the effect of conveying fee
title to all the land described while notifying Cramerus
that the grant is burdened by the railroad right-of-way and reserving the
railroad’s right to continue using that land. 
  

          Recognizing
that “separate ownership of long narrow strips of land, distinct from the land
adjoining on each side, is a fruitful source of litigation and disputes,” the
Texas Supreme Court developed a rule with respect to the legal construction of
conveyances like Lumpkin’s to Cramerus:  “[I]t is presumed that a grantor has no intention
of reserving a fee in a narrow strip of land adjoining the land conveyed when
it ceases to be of use to him, unless such fee is clearly reserved.”  Cantley v. Gulf Prod. Co., 143 S.W.2d 912, 915 (Tex. 1940)
(presuming that language “keeping” thirty-foot-wide road easement did not
reserve title to strip of land underlying easement in absence of evidence of
clear intention to do so).  Stated
differently, “[w]hen an instrument conveys land definitely described in the
instrument and then excepts from the conveyance a road, railroad right-of-way
or canal right-of-way occupying an easement on, over or across the land
conveyed, the instrument conveys the fee to the entire tract, subject to such
right-of-way, unless the deed clearly indicates that the grantor intended to
reserve the strip.”  Moore v. Rotello,
719 S.W.2d 372, 375-76
(Tex. App.—Houston [14th Dist.] 1986, writ ref’d n.r.e.) (concluding that “save and except” language
in deed was not express reservation of interest in property, it had no other
effect than to say that grant was burdened with railroad right-of-way, and deed
conveyed fee title to entire tract of land). 
   

There is no disagreement that the
railroad right-of-way at issue here is a forty-foot-wide strip of land that adjoins
and separates the Main and Panhandle Tracts conveyed in the Cramerus
Deed.  And, we see no reason why “LESS”
should have a different legal effect than “keeping” or “save and effect,” as
those terms have given rise to the presumption stated above in Cantley and Moore.  See Cantley, 143 S.W.2d at 915; Moore, 719 S.W.2d at 375-76.  Applying that presumption, the Cramerus Deed would be reasonably susceptible to only one
construction—i.e., the construction urged
by Waste Management—unless
Boulanger presented summary judgment evidence that clearly indicated Lumpkin
intended to retain an interest in the right-of-way.  He did not. 


Although he asserts that the
“evidence shows the [right-of-way] is not a narrow strip of land” and that it
has some individual value because “[m]ost lots
located in any metropolitan area such as Houston are 50 or so feet wide” and
“many lots where townhomes are constructed are only 20 feet in width,”
Boulanger has not cited to any place in the record where the evidence of such
facts appears.  Nor can we find any
evidence that the right-of-way was useful to Lumpkin after he conveyed the Main
and Panhandle Tracts to Cramerus.[2]   Moreover,
as we have already determined that the word “LESS” has special meaning beyond
its common dictionary definition, we find no other language in the Cramerus Deed indicating that Lumpkin intended to reserve
the right-of-way for his own use.   

In the absence of evidence that
Lumpkin “clearly reserved” title to the right-of-way, we conclude that the Cramerus Deed unambiguously conveyed fee title to all of the
land described therein, including the Main Tract, the Panhandle Tract, and the
right-of-way.  The property description
that follows the word “LESS” merely served to notify Cramerus
that the grant was burdened by the railroad right-of-way.  Boulanger concedes that, if the Cramerus Deed conveyed fee title to the right-of-way, then
Waste Management acquired that title under the Waste Management Deeds in 1991,
so we need not consider whether the Waste Management Deeds are valid or whether
Waste Management’s chain of title is complete. 
Further, because the Cramerus Deed is
unambiguous, we will not decide whether the extrinsic evidence attached to the
summary judgment motion and response raises an issue of fact as to ownership of
the right-of-way.  See CenterPoint Energy, 177 S.W.3d at 430.
 Instead, we conclude only that the trial
court did not err in granting summary judgment for Waste Management. 

We overrule Boulanger’s first,
third, and fifth issues.

Conclusion

          Having
found no error, we affirm the trial court’s summary judgment.  

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

 











[1]
          To recover damages for trespass
to real property, a plaintiff must show that (1) he owns or has a lawful right
to possess the real property, (2) the defendant entered the plaintiff’s land
and the entry was physical, intentional, and voluntary, and (3) the defendant’s
trespass caused injury to the plaintiff. 
Tex. Woman’s
Univ. v. The
Methodist Hosp., 221 S.W.3d 267, 286 (Tex.
App.—Houston [1st Dist.] 2006, no pet.).  





[2]
          In that part of his brief
addressing the extrinsic evidence presented as a part of the summary judgment,
Boulanger contends that a fact issue exists as to whether Lumpkin intended to
reserve the right-of-way because, at the time he executed the Cramerus Deed, he had not yet granted the right-of-way to
the railroad.  We do not consider this
contention because it was not raised as a ground for defeating Waste
Management’s summary judgment motion in the trial court.  See Priddy v. Rawson, 282 S.W.3d 588, 597 (Tex.
App.—Houston [14th Dist.] 2009, pet. denied).