ACCEPTED
08-20-00205-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
4/28/2021 1:01 PM
ELIZABETH G. FLORES
CLERK

No. 08-20-00205-CV

IN THE COURT OF APPEALS FOR THE
EIGHTH JUDICIAL DISTRICT, EL PASO, TEXAS

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
4/28/2021 1:01:51 PM
ELIZABETH G. FLORES
Clerk

**JAMES H. DAVIS d/b/a JD MINERALS, WALTER ALLISON BAEN,
SANTOS J. DOMINGUEZ AND DIXIE L. HESTER,**
**Appellants**

**v.**

**NEAL BRUSENHAN PROPERTIES, LP; NEAL BRUSENHAN
MANAGEMENT, LLC, AS GENERAL PARTNER OF NEAL
BRUSENHAN PROPERTIES, LP; ROBERT L. NEAL AS TRUSTEE OF
THE NEAL ROBERT L. MANAGEMENT TRUST;
JESSIE FRANCES NEAL; and COG OPERATING, LLC,**
**Appellees**

Appeal from 112th District Court, Upton County, Texas

**APPELLANTS' REPLY BRIEF**

**LAW OFFICE OF**
**AUDREY MULLERT VICKNAIR**
Audrey Mullert Vicknair
State Bar No. 14650500
802 N. Carancahua Street, Ste. 2100
Corpus Christi, Texas 78401-0038
(361) 884-5400; (361) 884-5401 fax
avicknair@vicknairlaw.com

**LAURA H. BURNEY**
State Bar No. 03437400
335 Geneseo Road
San Antonio, Texas 78209
(210) 431-2264; (210) 227-7924 fax
lburney@lhburneylaw.com

**FRENCH BENTON, PLLC**
Matthew French
State Bar No. 24085314
matt@frenchbenton.com
J.D. Benton
State Bar No. 24097369
jd@frenchbenton.com
415 W. Wall Street, Ste. 1240
Midland, Texas 79701
(432) 888-8996

*Attorneys for James H. Davis d/b/a JD
Minerals, Walter Allison Baen, Santos J.
Dominguez and Dixie L. Hester*

# TABLE OF CONTENTS

INDEX OF AUTHORITIES…………………………………………………….v

SUMMARY IN REPLY…………………………………………………………1

ISSUES PRESENTED, RESTATED

I.  Applying controlling rules of deed interpretation, Appellants own a portion of the Sessler NPRI.

  A.  The *Duhig* Doctrine does not deprive Appellants of their ownership of the Sessler NPRI.

    1.)  *Concord Oil* and its progeny preclude the Neals' reliance on the two-grant doctrine to create their *Duhig* estoppel/estoppel by deed argument.

    2.)  The 1939 Deed provides notice of the Haun conveyance (of one interest -- a mineral interest), and excludes it from the grant.

    3.)  Grantee Roberts had actual and constructive notice of the outstanding Haun interest from her pre-execution title opinion produced by the Neals.

  B.  The "presumed grant" theory does not deprive Appellants of the NPRI they own; no gaps in title exist or are alleged.

  C.  Appellants are not time-barred from benefitting from the NPRI they own.

II.  Because Appellants own the floating NPRI, fact issues exist as to whether the Neals breached their executive duties (including by accepting royalty attributible to the Sessler NPRI, self-dealing, failing to inform NPRI owners of leases and royalties, and pressuring operators to ignore the NPRI).

III.  Appellants' claims against the Neals that are ancillary to title can be remanded for disposition by the trial court, as it does not appear the trial

court addressed those claims on the merits; they were premature (the court considered them to be "part 2" of the case). If this Court determines to address those claims, Appellants here show that the various defenses alleged by the Neals lack merit, and more than a scintilla of evidence supports Appellants' claims.

IV.    Appellants' claims against COG  likewise need not be reached here, as the trial court vacated the summary judgment entered in favor of COG, which COG has not appealed. Further, the trial court does not appear to have reached the claims ancillary to title on the merits; they were premature and are the only claims against COG. But again, as a precaution, Appellants show that more than a scintilla of evidence supports their claims against COG, and COG's defenses lack merit.

ARGUMENT…………………………………………………………………….4

I.    The Neals Misrepresent the Language in the 1939 and 1926 Deeds and Contradict Texas Supreme Court Authority Governing Deed Interpretation…………………….…………………………………..4

   A. The language in the 1939 Deed precludes application of *Duhig*….4

   B. The Neals mispresent the language in the 1926 Deed and the law that governs its interpretation …………………………………….9

   C. The Sesslers reserved a 1/4th floating NPRI in the 1939 Deed …………………………………………………………..11

   D. The Sessler NPRI burdens the Neals' mineral interest………………………………….…………………..12

   E. Conclusion as to *Duhig* …………………………….……....14

II.    The Passage of Time and the Presumed Grant Doctrine Cannot Deprive Appellants of the NPRI They Own...…………………15

III.    Ancillary Claims (Responsive to Neal Brief 35-53)……...………….17

IV.     COG……..………………………………………………..19

CONCLUSION AND PRAYER………………………………………………….20

CERTIFICATE OF COMPLIANCE……………………………………………...22

CERTIFICATE OF SERVICE…………………………………………………....22

# INDEX OF AUTHORITIES

## CASES

*Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818
(Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.)..............................................8

*Concord Oil Co. v. Pennzoil*, 966 S.W.2d 451 (Tex. 1998)........................... ii, 2, 10

*Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878 (Tex. 1940)................. *passim*

*Fisher v. Wynn*, No. 12-11-00008-CV, 2011 Tex. App. LEXIS 6031
(Tex. App.—Tyler Aug. 3, 2011, no pet.) .............................................................8

*French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795 (Tex. 1995)................................12

*Greer v. Shook*, 503 S.W.3d 571 (Tex.  App.—El Paso 2016, pet. denied)............10

*Harris v. Windsor*, 294 S.W.2d 798 (Tex. 1956) .....................................................7

*Hysaw v. Dawkins*, 483 S.W.3d 1 (Tex. 2016).......................................................12

*Philipello v. Taylor,* No. 10-11-00014-CV,
2012 Tex. App. LEXIS 3324 (Tex. App.—Waco Apr. 25, 2012, pet. denied)....8

*Temple-Inland Forest Prods. Corp. v. Henderson Family P'ship, Ltd.*,
958 S.W.2d 183 (Tex. 1997) ..............................................................................12

*Trial v. Dragon*, 593 S.W.3d 313 (Tex. 2019) ............................................. 6, 7, 8, 9

*Van Dyke v. Navigator Grp.,* No. 11-18-00050-CV,
2020 Tex. App. LEXIS 10448
(Tex. App.—Eastland Dec. 31, 2020, pet. filed) ......................................... 16, 17

*Wenske v. Ealy*, 521 S.W.3d 791 (Tex. 2017) ............................................ 7, 12, 13

## STATUTES AND RULES

Tex. Civ. Prac. & Rem. Code § 37.004(a)...............................................................16

Tex. R. App. P. 43.2(c) ...........................................................................18

Tex. R. App. P. 43.2(d) ...........................................................................18

Tex. R. App. P. 43.3(b) ...........................................................................18

**TO THE HONORABLE EIGHTH COURT OF APPEALS:**

COME NOW APPELLANTS James H. Davis d/b/a JD Minerals, Walter Allison Baen, Santos J. Dominguez and Dixie L. Hester and file their Reply Brief, seeking reversal of the trial court's summary judgment orders and rendition of judgment in their favor on the issue of title. In support, Appellants would show:

## SUMMARY IN REPLY

Contrary to the Neals' approach to this case, this Court cannot ignore the clear language of the 1939 Deed, including its two references to the mineral interest previously conveyed to Haun. Nor can this Court ignore long-standing precedent controlling deed interpretation and the extremely limited application of the doctrine the Neals claim "precludes" Appellants from their interest: the *Duhig* Doctrine.[1] When the law is properly applied, this Court must hold the following: 1) the *Duhig* Doctrine does not apply to this case; 2) the 1939 Deed reserved a 1/4th floating non-participating royalty interest (NPRI) in the Sesslers (Appellants' predecessors), and that NPRI burdens the Neal Appellees' mineral interest; and 3) Appellants have not lost title to the NPRI through the "presumed grant" doctrine or statutes of limitation. The law and the facts do not support the trial court's judgment. The court should have rendered judgment for Appellants, declaring that the mineral conveyance to Roberts (the Neals' predecessor) was and remains burdened by the Sesslers'

---

[1] *Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878 (Tex. 1940).

reserved NPRI, a portion of which (equating to a 34/320th NPRI) now belongs to Appellants.

In a confused and conflated argument that ignores the clear language in the Deeds and settled deed interpretation precedent, the Neals devote most of their brief to improperly claiming the *Duhig* doctrine "precludes" Appellants from benefiting from their ownership of the Sessler NPRI. But the Texas Supreme Court has confirmed that doctrine only applies when: 1) the deed at issue purports to reserve the "exact" mineral interest the deed conveyed, and 2) the deed fails to reference a prior mineral interest in the chain of title. Only when those facts appear -- because both the reservation and the grant cannot be given effect (because the grantee would be left with a smaller interest in the mineral estate than the grant conveys) -- a grantor will lose the reserved mineral interest, pursuant to "the *Duhig* theory." In this dispute, the language of the 1939 Deed precludes application of *Duhig*: 1) the Sesslers did not reserve any mineral interest in themselves, and 2) the Deed does not fail to reference a prior mineral interest in the chain of title but rather expressly references the prior mineral interest owned by Haun -- not once but twice.

To ply this dispute into *Duhig*, the Neals continue to ignore the seminal Texas Supreme Court case of *Concord Oil Co. v. Pennzoil*, 966 S.W.2d 451 (Tex. 1998), which rejects the Neals' two-grant interpretation of the 1926 Deed. Under *Concord Oil*, with that Deed the Sesslers conveyed a single 1/4th mineral interest to Haun in

2

the subject tract. The Neals fail to address *Concord Oil* and its progeny; their interpretations of the 1926 and 1936 Deeds are wrong as a matter of law.

For all the Neals' machinations, they simply cannot finagle the facts or the law to force the *Duhig* doctrine into this dispute.

The Neals similarly distort the "presumed grant" theory, which only applies in limited circumstances: when a gap appears in a claimant's chain of title. Here, Appellants claim their portion of the NPRI with an unbroken chain of title. Appellants own a portion of the Sessler NPRI. There is no need to "presume" a grant. That theory, like the *Duhig* doctrine, has no application to this dispute.

Finally, the Neals repeatedly and erroneously contend that Appellants' claims are barred by limitations. The Neals concede the fact that Appellants filed a trespass-to-try title action (which the Neals ***admit*** has no statute of limitations) as well as a declaratory judgment action. Regarding the latter, Appellants acquired their interests in late 2017 and early 2018 and brought suit within months to have their rights declared and protected. Moreover, as Appellants demonstrated in their brief, statutes of limitation do not bar Appellants' declaratory request asking this Court to interpret the unambiguous deeds as a matter of law.

Appellants pray the Court to hold, as the Deeds establish and the law requires, that the mineral conveyance to Roberts was and remains burdened by the Sesslers' reserved NPRI, a portion of which (equating to a 34/320th NPRI) now belongs to

Appellants. Appellants are entitled to the benefits of that ownership. The trial court's summary judgment must be reversed, and judgment rendered for Appellants proclaiming they own a portion of the NPRI burdening the subject property. Appellants' tort and ancillary claims against the Neals should be remanded for trial, where their claims against COG await. In the event the Court addresses breach of executive duty (and other ancillary claims), Appellants have established that fact issues exist.[2]

## ARGUMENT

### I. The Neals Misrepresent the Language in the 1939 and 1926 Deeds and Contradict Texas Supreme Court Authority Governing Deed Interpretation

All parties agree the interpretation of the 1939 Deed controls this dispute. All parties agree the 1939 Deed is unambiguous, meaning this Court can construe it as a matter of law. Appellants have asked this Court to interpret all the plain terms of the 1939 Deed (and the 1926 Deed that came before it) pursuant to Texas Supreme Court authority governing the deed interpretation process. To accomplish their goal of negating the NPRI, the Neals ignore the clear language of the Deeds and Texas Supreme Court precedent.

#### A. The language in the 1939 Deed precludes application of *Duhig*

The Neals misrepresent the 1939 Deed in their Statement of Facts, claiming

---

[2] See Ant Br 52: Appellees suppressed payment of the Sessler NPRI despite multiple operators holding title opinions mirroring Appellants' deed construction (CR2151-52).

4

the Sesslers reserved a "royalty" interest that had been previously conveyed: "By the terms of the 1939 Warranty Deed [the grantors the Sesslers] attempted to reserve a ¼ *royalty* interest from the conveyance to [grantee Roberts] but this ¼ *royalty* interest had previously been conveyed to W. H. *Haun* in the 1926 Royalty Deed…." (Ee Br 1) (emphasis added). Throughout their brief, the Neals continue to misstate, in a variety of ways, the interest previously conveyed to Haun in 1926, the interest the Sesslers reserved in themselves in 1939, and the interest the Sesslers conveyed to Roberts in 1939 (e.g., Ee Br 5, 6-7, 9, 12, 14, 21, 26).

The Sesslers did not reserve in themselves an interest previously conveyed. Rather, first, the 1939 Deed references the prior conveyance of a mineral interest (not a royalty interest) to a named individual, Haun: "It is understood, however, that 1/32 of the oil, gas and other **minerals** has heretofore been conveyed to W. H. **Haun,** and this conveyance does not include such **mineral interests** so conveyed;" later the Deed states again, "…*subject to* the **mineral** interest hereto-fore conveyed to W. H. **Haun**…." (CR CR1229-1230, Ant Br App. C)  It is objectively false to say that "There is no exception or mention in the 1939 Warranty Deed of a prior conveyance of a … mineral interest" in the 1939 Deed (Ee Br 9).

Second, the 1939 Deed unequivocally reserves an NPRI, not a mineral interest, in the Sesslers.

In truth, the 1939 Deed conveyed to Roberts the surface of the described tract

(Section 45, Block 40, T-5-S, T&P Ry Co, Upton County, Texas) and all the minerals the Sesslers owned in that tract: an undivided 3/4th mineral interest. The Sesslers had previously conveyed 1/4th of the minerals to Haun in 1926 (CR1221-22, 1223-24, Ant Br App. B[3]).

The 1939 Deed does not fit the criteria required for the Court to apply *Duhig*. As the Neals concede, the *Duhig* doctrine only applies when the deed at issue (1) conveys property by warranty deed, (2) "reserves a mineral interest in the grantors," and (3) "fails to except mineral interests reserved in prior recorded deeds" (EE Br 6). The 1939 Deed reserves an NPRI, not a mineral interest in the Sesslers; grantee Roberts received all the minerals in the tract that the grantor Sesslers owned; and the Deed contains not one but two references to the prior conveyance of a mineral interest to Haun (CR1229-1230).

Moreover, in 2019, the Supreme Court continued a decades-long trend of criticizing and narrowing the 1940 ruling in *Duhig* (see Ant Br 12, n. 8). In *Trial v. Dragon*, the Court confirmed, "*Duhig* applies the doctrine of estoppel by deed ***to a very distinct fact pattern*, *and its holding is narrow and confined to those specific facts*.*" *Id*., 593 S.W.3d at 318 (emphasis added) (Ant Br 6-7, 12-14, 15, 18, n. 8, 9). That fact pattern requires a showing that 1) the deed reserves the exact mineral

---

[3] The Neals make much of the fact that the 1926 Deed is titled "Royalty Deed" (e.g., Ee Br 1, 3, 4, 5, 9, 28). As Appellants have established, it is the substance, not the title, that governs (Ant Br 25, n. 20).

interest the deed purports to convey (not here); and 2) the deed lacks a reference to a deed conveying an undivided mineral interest in a third party (not here) (*id*.). The Neals cannot escape this clear holding or the extensive list of authorities showing the very limited applicability of *Duhig* (Ee Br 14-18).

To avoid *Trial*, and the original *Duhig* holding, the Neals falsely assert that the Sesslers' reservation of a "royalty" interest triggers *Duhig* (EE Br. 13: "*Duhig* applies to royalty interests, and the Texas Supreme Court has recognized the grantees interest should be protected," citing *Wenske v. Ealy*, 521 S.W.3d 791 (Tex. 2017)). No case, including *Wenske,* has ever expanded *Duhig* to a deed reserving an NPRI as opposed to a reservation of a mineral interest purported to be conveyed (see, e.g., Ant Br n. 8). Notably, the deed at issue in *Wenske* did not invoke *Duhig*, the parties did not argue *Duhig*, and the majority opinion never mentions the *Duhig* doctrine. *Wenske*, 521 S.W.3d at 791-800.

Next, the Neals attempt to ignore the express exception of the Haun mineral interest in the 1939 Deed by arguing the reference must include the phrase "for all purposes." (Ee Br 19) No such requirement appears in *Duhig* or in cases analyzing *Duhig*. Indeed, contrary to the Neals' discussion of *Harris v. Windsor*, 294 S.W.2d 798 (Tex. 1956), *Harris* stands in a long line of cases **refusing** to apply *Duhig* when a deed includes **any** reference to an outstanding interest, as here. *Id.* at 801 (*see* Ant Br n. 8, 9). The deed at issue in *Duhig* made **no reference** to any prior reservation

7

of a 1/2 mineral interest in the conveyed property, while purporting to reserve an undivided 1/2 mineral interest in the grantor (leaving the grantee with less interest than granted). *Accord*, *Philipello v. Taylor,* No. 10-11-00014-CV, 2012 Tex. App. LEXIS 3324, **25-28 (Tex. App.—Waco Apr. 25, 2012, pet. denied) (holding deed put grantee on notice of prior conveyance and outstanding interest, without reference to "for all purposes").[4]

Contrary to the Neals' assertions, Appellants do not seek to change the law (Ee Br 22), they seek to apply long-standing precedent to the Deeds at issue in this case. As such, ultimately, *Duhig* does not and cannot apply: the 1939 Deed conveyed all the minerals the Sessler grantors owned (an undivided 3/4th mineral interest), with no reservation of a mineral interest in the Sesslers. The Deed further contains two exceptions referencing the prior conveyance of the mineral interest to a named individual – Haun. The Deed does not fit the *Duhig* requirements. The Sesslers, their heirs and assigns (including Appellants) cannot be stripped of the NPRI

---

[4] The Neals then attempt to invoke inapplicable canons of construction and inapposite case law to force this dispute into *Duhig* (Ee Br 21-22, referencing "exceptions strictly construed against the grantor," and "greatest estate conferred on grantee"). Both canons are subordinate to harmonization principles and are employed only if doubt remains. *Fisher v. Wynn*, No. 12-11-00008-CV, 2011 Tex. App. LEXIS 6031, *17 (Tex. App.—Tyler Aug. 3, 2011, no pet.) (citing *Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818, 824 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.)). The Deed language is clear, and the directly applicable law is clear. Case law does not support stripping NPRI ownership through application of the "greatest estate" canon of construction.

expressly reserved in the 1939 Deed under the *Duhig* doctrine. Instead, as the Texas Supreme Court explained in *Trial*, the only remedy available would have been for Roberts, as grantee in the 1939 Deed, to seek damages for breach of warranty (Ant Br 13). *Trial*, 593 S.W.3d at 319. There is no dispute Roberts sought no such remedy.

**B. The Neals misrepresent the language in the 1926 Deed and the law that governs its interpretation**

The Neals assert *Duhig* controls this dispute but state *Duhig* applies only if this Court interprets the 1926 Deed as having conveyed two interests to Haun: one interest in the mineral estate and a second they repeatedly label as a "royalty" (Ee Br *passim*). As Appellants demonstrated in their brief, because the 1926 Deed conveyed a single 1/4th mineral interest to Haun, under the Appellees' own argument, the *Duhig* doctrine does not apply (Ant Br 15-18, 20-26). The Court can end its inquiry here.

The Neals wrongly assert, without supporting authority or analysis, that the 1926 Deed conveyed not one interest but two: a 1/4 royalty to Haun and a separate 1/32 mineral interest (Ee Br pp. 4, 11, 14, 18, 24, 26, 27). Citing Texas Supreme Court precedent, Appellants thoroughly debunked that interpretation, and the Neals offer no substantive response to the law (Ant Br 20-26). The Neals fail to even cite *Concord Oil,* 966 S.W.2d 451, let alone discuss the lengthy precedent that case established discrediting the two-grant theory the Neals improperly employ to misinterpret the 1926 Deed. Unlike the Neals, this Court in prior decisions has

embraced rather than ignored *Concord Oil*. *Greer v. Shook*, 503 S.W.3d 571, 583 (Tex. App.—El Paso 2016, pet. denied) (recognizing *Concord's* rejection of two-grant interpretation of multiclause deed form). Moreover, like the deed in *Concord Oil*, the 1926 Deed is devoid of language indicating the intent to convey two disproportionate interests (*See* Ant Br 23).

*Concord Oil* further contradicts the Neals' claim that the "estate misconception" and "legacy of the $1/8^{th}$ royalty" only apply when the issue is whether the deed conveys a fixed or floating royalty (because of "double fractions") (Ee Br 25-26). *Concord Oil* applied the "estate misconception" when interpreting a mineral deed that did **not** involve "double fractions;" also, no party argued the multiclause deed in that case created a NPRI. The Court used the "estate misconception" to interpret and "harmonize" the conflicting fractions ($1/96^{th}$ in the granting clause, "$1/12^{th}$ of rents and royalties" under existing and future oil and gas leases) to interpret the deed as having conveyed a single $1/12^{th}$ mineral interest ($1/96^{th}$ representing the share of production owed to the owner of a single $1/12^{th}$ mineral interest when oil and gas leases contained the once common $1/8^{th}$ landowner's royalty [$1/12 \times 1/8 = 1/96$]) (*see*, Ant Br 21-24).

Honoring Texas Supreme Court precedent and the plain language of the 1926 Deed from the Sesslers to Haun, that Deed must be interpreted as having conveyed a single $1/4^{th}$ mineral interest: the fraction used in the granting clause, $1/32^{nd}$, reflects

the share of proceeds from production owed when oil and gas leases contained the once common $1/8^{th}$ lease royalty ($1/4 \times 1/8 = 1/32^{nd}$).

The estate misconception likewise explains and harmonizes the 1939 Deed's reference to the Haun Deed as a $1/32^{nd}$ mineral interest when it actually conveyed a $1/4^{th}$ mineral interest. The owner of a $1/4^{th}$ mineral interest would receive, as a matter of law, a $1/32^{nd}$ share of the proceeds of production (Ant Br 24-26).

But, critical here, regardless of the appearance of the fraction $1/32^{nd}$ rather than $1/4^{th}$, the two express references to Haun's prior mineral interest in the chain of title precludes application of *Duhig* to this dispute.

### C. The Sesslers reserved a 1/4th floating NPRI in the 1939 Deed

Because the 1926 Deed conveyed only a single mineral interest to Haun, the 1939 Deed references only that mineral interest (twice). As Appellants have shown, the 1939 Deed also reserved to the Sesslers a floating $1/4^{th}$ NPRI. Instead of properly identifying that interest as an NPRI, the Neals state the Sesslers "attempted" to reserve a royalty interest (Ee Br 1). Indeed, the Sesslers reserved in themselves a 1/4 floating NPRI: "It is further understood and agreed that *we reserve unto ourselves* our heirs and assigns, *one-fourth (1/4) of the 1/8 royalty* usually reserved by and to be paid to the land owner in event of execution of oil and gas leases…," and again excepting "the 1/4th royalty interest reserved by us as hereinbefore stated…." (CR1221-22, 1223-24 [Ant Br App. B]; Ant Br 18-19: interpreting Sessler

reservation under *Hysaw v. Dawkins*, 483 S.W.3d 1 (Tex. 2016)).

To avoid the plain language of the 1939 Deed (and the 1926 Deed), the Neals conflate and confuse the "royalty" reserved in oil and gas leases with the distinct interest owners of mineral estates (like the Sesslers) can create in themselves through their deeds: a NPRI. As Texas Courts have consistently recognized, a NPRI differs from the conveyance or reservation of a mineral interest and is distinct from the "royalty" owed a landowner pursuant to the terms of an oil and gas lease. *Hysaw*, 483 S.W.3d at 9 (recognizing a floating NPRI depends on landowner's royalty percentage in oil and gas leases); *Temple-Inland Forest Prods. Corp. v. Henderson Family P'ship, Ltd.*, 958 S.W.2d 183, 185–86 (Tex. 1997) (interpreting deed reservation as creating NPRI not mineral interest when construing the deed as a whole); *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 798–98 (Tex. 1995) (clarifying differences between deeds that create NPRI rather than mineral interest). As Appellants made clear in their opening brief, the Sessler reservation created a floating NPRI (Ant Br 18-19).

### D. The Sessler NPRI burdens the Neals' mineral interest

The Neals falsely claim *Duhig* fits the facts of this dispute to achieve their goal of unburdening their minerals from the Sessler NPRI. But as a matter of law when the Sesslers conveyed their 3/4th mineral interest to Roberts in 1939, those minerals were burdened by the NPRI reserved by the Sesslers in the same Deed.

*Wenske*, 521 S.W.3d at 797-98 (confirming that an NPRI created by a mineral owner burdens the minerals owned by that grantor).

In *Wenske*, the Wenskes owned a tract of land in Lavaca County, Texas they received through a 1988 warranty deed that conveyed the surface and all the minerals beneath the tract to the Wenskes, but the grantor reserved a 1/4th NPRI. In 2003, the Wenskes executed a warranty deed to the Ealys, conveying all the land but expressly reserving an undivided 3/8th mineral interest. Thus, the Ealys received a 5/8th interest in the minerals. *Id.* at 793. That 2003 deed also expressly referenced the NPRI owned by the Wenskes' grantor (in the 1988 deed), placing the grantees on notice that the minerals were burdened by the NPRI. *Id.* at 796. The parties did not dispute that the NPRI burdened the entire mineral estate when the Wenskes owned it. The issue was whether the 2003 deed contained sufficient language to require the Ealys to bear the entire burden of the NPRI, rather than their proportionate share. *Id.* at 793-94.

Applying its precedent requiring courts to seek the parties' intent by examining all language in a deed, the Supreme Court held that standard clauses in the deed did not alter the burden of the prior NPRI. *Wenske*, 521 S.W.3d at 797 (interpreting "subject to" clauses in deed form and holding those standard clauses did not address the burden of a prior NPRI). That is, the prior NPRI continued to burden the entire mineral estate, because the grantor who reserved the NPRI had

owned 100 percent of the minerals when the NPRI was reserved.[5]

Here, the Sesslers owned 3/4ths of the minerals (1/4th having been conveyed to Haun in 1926) when they conveyed the surface and those minerals to Roberts through the 1939 Deed. That same Deed reserved the NPRI in the grantors. Thus, the mineral conveyance to Roberts was and remains burdened by the Sesslers' reserved NPRI, a portion of which (equating to a 34/320th NPRI) now belongs to Appellants. The effect of the burden is to reduce the Neals' share of payments from their lessees' sales of oil and gas produced from the subject tract. The Neals cannot avoid that burden, under the plain language of the Deeds and binding Texas precedent.

### E.    Conclusion as to *Duhig*

To strip Appellants of their NPRI which burdens the Neals' interest in the subject property, the Neals rely first on the *Duhig* doctrine and assert that the Sesslers "over-conveyed" mineral and royalty interests to Roberts, thereby dispossessing the Sesslers (Appellants' predecessors) of the NPRI they reserved in themselves. As shown above, for all the Neals' machinations, they simply cannot make *Duhig* apply. There was no over-conveyance. The *Duhig* doctrine does not apply. Therefore, Appellants cannot be deprived of their interest under that theory. To the extent the

---

[5] Once the minerals were owned in cotenancy, the cotenants' interests were burdened with their proportionate share of the prior NPRI. *Id.* at 798 (holding 3/8th mineral interest retained by grantor remained proportionately burdened by pre-existing NPRI).

trial court ruled otherwise, the court's summary judgment must be reversed, and judgment should be rendered for Appellants. Appellants own a portion of the NPRI the Sesslers reserved in themselves in the 1939 Deed. That NPRI burdens the 3/4 mineral interest conveyed to Roberts in the same Deed.

## II. The Passage of Time and the Presumed Grant Doctrine Cannot Deprive Appellants of the NPRI They Own

The Neals state, ad nauseum, that Appellants are time-barred from bringing their claims to title.

First, the Neals acknowledge that Appellants alleged a trespass to try title claim, and that no statute of limitations applies to that claim (Ee Br 8, 32, CR388, 393 [acknowledging trespass to try title is proper claim], 567-68 [alleging limitations as to every claim *except* trespass to try title]).

Second, the Neals present no additional briefing about limitations as relates to Appellants' declaratory judgment action. Appellants fully briefed the multitude of legal principles that permit their DJA claim (Ant Br 28-32), and Appellees present no substantive response (Ee Br 34-35). Indeed, Appellees simply parrot precisely what they said in the trial court, stating in but one sentence that limitations applies, relying on a statute and a case the Appellants showed clearly did not support Appellees' position (Ant Br 30, Ee Br 34-35, CR567-68). As for the references to leases recorded in 2005 (Ee Br 35), Appellants did not obtain their interests until 2017 and 2018, then filed suit within months (as the Neals acknowledge, Ee Br 2).

15

It was not until Appellants acquired their interests that they had a justiciable interest in the controversy; it was only then that they were "persons interested under a deed" who could "have determined any question of construction or validity arising under the instrument … and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a). While the Sesslers may not have availed themselves of this relief, the Neals present this Court with no authority establishing that Appellants are precluded from doing so. The Neals have presented nothing new to the Court. Limitations does not bar Appellants' claims to title.[6]

Regarding presumed grant (Ee Br 7-8, 30-31), the evidence is clear: Appellants have a clear, unbroken chain-of-title to the Sessler NPRI (Ant Br 26-28). The Neals' and the Appellants' abstracts of title are virtually identical. Appellants stand on their briefing which establishes the presumed grant/presumed lost deed doctrine is inapplicable: both parties have produced unbroken chains of title, and there are no gaps in title (*id*.).

This is purely a deed interpretation dispute. A recent case, issued after Appellants filed their opening brief, supports this position: *Van Dyke v. Navigator*

---

[6] Appellants note that the Neals do not contend, in their brief, that laches applies to Appellants' title claims but instead focus that defense on Appellants' "tort" claims (Ee Br 8, 35, 37-39). They did the same in the trial court, and only asserted laches as to unjust enrichment and constructive trust (CR561). In an abundance of precaution, Appellants fully briefed the inapplicability of laches to their title claim (Ant Br 31-32, including that laches does not apply to trespass to try title and the Neals have in no way been disadvantaged here – they continue to reap the entire royalty benefits from the subject property).

*Grp.,* No. 11-18-00050-CV, 2020 Tex. App. LEXIS 10448, at *15-18 (Tex. App.—Eastland Dec. 31, 2020, pet. filed). The Eleventh Court reiterated that presumed grant typically only applies where gaps in the chain of title appear. On the other hand, when the *quanta* of interest conveyed is at issue and can be determined by interpretation of a deed (similar here) "…the presumed grant doctrine **may not be used to reinterpret** [the deed] and therefore alter its unambiguous terms." *Id.* at * 17 (emphasis added). The Neals cannot rely on the presumed grant doctrine here because there are no gaps in the chain of title.

## III. Ancillary Claims (Responsive to Neal Brief 35-53)

With respect to Appellants' ancillary claims (which the Neals refer to as "tort claims," Ee Br 35-53), as clearly stated in Appellants' opening brief, all these claims are dependent on the Court's determination as to title. Appellees now acknowledge that various of Appellants' claims are "premature and not ripe" because title has not been established in Appellants (see, e.g., Neal Ee Br 40-41 [breach of fiduciary duty, breach of the duty of good faith and fair dealing, tortious interference]; 50 [asserting no constructive trust because no fiduciary relationship]). Tellingly, Appellees state in their Brief, "As with all of Appellants' tort claims, the trial court determined that the Appellants could assert no torts as they did not own the disputed NPRI." (*id.* 51)

These admissions directly contradict the Neals' earlier contention that Appellants rely on "a single statement" by the Neals' counsel below to support their

17

position that the trial court did not reach their ancillary claims (*id*. 35-36). Appellees are well aware the trial court did not reach these claims, as Appellants have clearly shown (with far more than one quote from opposing counsel in support): the trial court saw this case as having "two parts" – title being the first part, the ancillary claims being the second. The Neals have now confirmed that fact.

If the Court reverses the trial court's order and holds that Appellants hold title to a NPRI burdening the subject property, then Appellants pray the Court to remand all their ancillary claims for disposition by the trial court. The Court may reverse the trial court's judgment in part and render the judgment the trial court should have rendered as to title, and remand the remainder of the claims for further proceedings. Tex. R. App. P. 43.2(c), (d). The interests of justice support such a remand of these ancillary claims to the trial court for disposition, particularly when the court was clear about his rulings in the case. Tex. R. App. P. 43.3(b). If Appellants do indeed own title to a portion of this NPRI, the trial court should have the opportunity to consider these ancillary claims in light of that ruling.

Alternatively, Appellants have clearly, and extensively, argued the law and the record regarding their ancillary claims and why summary judgment could not have been granted. Genuine issues of material fact exist to permit the trier of fact to decide those issues. The law supports recovery in favor of Appellants on these claims. If this Court reverses on title, the Court should also reverse as to all of

Appellants' attendant claims.

## IV. COG

As for COG, in its Brief, COG agrees that all claims against it "have been severed into a separate lawsuit and abated by the trial court" and "there is no final, appealable judgment." (Ee Br iv, v, 2, 3) COG confirms the severed case is "currently pending." (Ee Br 1, 2) COG also agrees that title must be determined first, and COG is not a party to the title dispute – Appellants and the Neal Appellees are the parties whose title must be determined (EE Br iv). All claims against COG are ancillary.

COG laments that it is a named party to this appeal. COG was a named defendant in the trial court's "Final Summary Judgment" (CR2310-11). Appellants filed a notice of appeal from that order and this appeal ensued. That is why COG is named in this appeal.

However, as COG notes, the trial court (while it still had plenary power) severed COG from the main proceeding and abated that new case (CR2336-28). The court then simultaneously lifted the abatement and set aside and vacated the order granting summary judgment as to COG (Supp.CR9-10). Appellants' claims against COG remain pending in that new case, as COG now concedes. Appellants could not know what COG's position would be with respect to the trial court's various actions, so Appellants preserved their rights to seek appellate relief, as necessary, in the trial

court and on appeal. Ultimately, COG filed neither a motion in the trial court challenging the court's actions nor a notice of appeal. And COG does not complain of the trial court's actions here.

Appellants have made their position as to COG clear in their brief: assuming COG made no attempt to challenge the trial court's actions on appeal, Appellants' claims against COG need not be reached here (Issue Presented No. 4). COG now agrees Appellants' claims against it remain pending below.

For the reasons stated here, COG's "plea to the jurisdiction" is misplaced; the Court need not diverge into a jurisdictional argument. COG should not be "dismissed from the appeal." And the Court cannot "affirm the trial court's summary judgment orders below" as COG posits (Ee 4).

Rather, Appellants pray the Court to reverse the order of the trial court that grants summary judgment to the Neal Appellees regarding title and hold that Appellants are indeed the record owners of an NPRI burdening the property at issue. Appellants' claims against COG will be tried below accordingly.

## CONCLUSION AND PRAYER

This is not a *Duhig* case. Presumed grant does not apply. Two-grant interpretation is no more. The Neals contort the Deeds and the caselaw to conjure a result. The trial court improperly granted summary judgment to the Neals. This Court can correct the fundamental errors of law applied below and must do so to

avoid an unprecedented shift in oil and gas jurisprudence.

Appellants pray the Court to REVERSE the trial court's summary judgment orders and RENDER judgment in part in their favor, holding Appellants hold title to the NPRI at issue, or otherwise remand this issue for further proceedings commensurate with the Court's analysis. Appellants pray the Court to REMAND the balance of their claims, including for attorneys' fees, which are all ancillary to title, to the trial court for disposition on the merits. Appellants pray for all other relief to which they are entitled.

Respectfully submitted,

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair
State Bar No. 14650500
Law Office of Audrey Mullert Vicknair
802 N. Carancahua, Suite 2100
Corpus Christi, Texas 78401
(361) 884-5400; (361) 884-5401 (fax)
avicknair@vicknairlaw.com

Laura H. Burney
State Bar No. 03437400
335 Geneseo Road
San Antonio, Texas 78209
(210) 431-2264; (210) 227-7924 fax
lburney@lhburneylaw.com

Matthew French
State Bar No. 24085314
matt@frenchbenton.com
J.D. Benton
State Bar No. 24097369
jd@frenchbenton.com
French Benton, PLLC
415 W. Wall St., Suite 1240
Midland, Texas 79701
(432) 888-8996

*Attorneys for Appellants*

21

## CERTIFICATE OF COMPLIANCE

This brief contains <u>5,197</u> words according to the word processing program utilized to create the brief, from "Summary in Reply" through the end of the Prayer. Text size is 14-point font in the body and 13-point in the footnotes.

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that a true and correct copy of the foregoing Appellants' Brief was served in accordance with the Texas Rules of Appellate Procedure on <u>April 28, 2021</u>:

David W. Lauritzen
dlauritzen@cbtd.com
Emily E. Brown
ebrown@cbtd.com
COTTON, BLEDSOE, TIGHE & DAWSON

Joe Baker
SCHEEF & STONE
jbaker@solidcounsel.com

David W. Wallace
wallacesonora@qmail.com
WALLACE LAW OFFICES

Ken Slavin
ken.slavin@kempsmith.com
KEMP SMITH LLP
ATTORNEYS FOR THE BRUSENHAN & NEAL DEFENDANTS

Len A. Wade
lwade@jw.com
Allison B. Allman
aallman@jw.com
JACKSON WALKER LLP
ATTORNEYS FOR COG OPERATING LLC

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Audrey Vicknair
Bar No. 14650500
avicknair@vicknairlaw.com
Envelope ID: 52913988
Status as of 4/28/2021 2:38 PM MST

Associated Case Party: COG Operating LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nicole Burkholder | | nburkholder@jw.com | 4/28/2021 1:01:51 PM | SENT |
| Sherri Goodwin | | sgoodwin@jw.com | 4/28/2021 1:01:51 PM | SENT |
| Alli Allman | | aallman@jw.com | 4/28/2021 1:01:51 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Benton | 24097369 | jd@frenchbenton.com | 4/28/2021 1:01:51 PM | SENT |
| David Wayne Lauritzen | 796934 | dlauritzen@cbtd.com | 4/28/2021 1:01:51 PM | SENT |
| Matthew French | 24085314 | matt@frenchbenton.com | 4/28/2021 1:01:51 PM | SENT |
| Joseph Baker | 24058547 | joe.baker@solidcounsel.com | 4/28/2021 1:01:51 PM | SENT |
| Audrey Vicknair | 14650500 | avicknair@vicknairlaw.com | 4/28/2021 1:01:51 PM | SENT |
| Ken K. Slavin | 18496100 | kslavin@kempsmith.com | 4/28/2021 1:01:51 PM | SENT |
| Laura H. Burney | 3437400 | lburney@stmarytx.edu | 4/28/2021 1:01:51 PM | SENT |
| Len Allen Wade | 20635050 | lwade@jw.com | 4/28/2021 1:01:51 PM | SENT |
| David Warren Wallace | 20765200 | wallacesonora@gmail.com | 4/28/2021 1:01:51 PM | SENT |
| Greta Duran | | greta.duran@kempsmith.com | 4/28/2021 1:01:51 PM | SENT |
| Mitzi Shannon | | mitzi.shannon@kempsmith.com | 4/28/2021 1:01:51 PM | SENT |